# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# CASE NO. 1:05-CV-00094-R

PAMELA LYNN LACER                                                                                      PLAINTIFF

v.

TAYLOR COUNTY, et. al.                                                         DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (DN 30) and Defendants' Motion for Partial Summary Judgment (DN 34). Although Defendants have responded to Plaintiff's motion (DN 42), Plaintiff has not, and the time to do so has elapsed. These motions are now ripe for adjudication. For the reasons that follow, Plaintiff's motion is DENIED while Defendants' motion is GRANTED.

Also before the Court are Plaintiff's Motion in Limine (DN 31) and Defendants' Motion in Limine (DN 33). Once again, while Defendants have responded (DN 43), Plaintiff has not, and the time to do so has passed. These motions are now ripe for adjudication. For the reasons that follow, Plaintiff's motion is GRANTED IN PART AND DENIED IN PART while Defendants' motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

This matter arises from Plaintiff Pamela Lacer's arrest by Defendant Brian M. Pickard, a deputy sheriff with the Taylor County Sheriff's Department. Lacer appears to claim that Pickard's actions during the arrest constituted excessive force and violated her substantive due

process rights under the Fourth and Fourteenth Amendments.[1]  These claims are brought pursuant to 42 U.S.C. § 1983.  DN 1 at 4.  She also brings the state-law causes of action of assault, battery, and outrage against Pickard.  Finally, Lacer alleges that both Defendants Sheriff John Shipp and Taylor County should be found liable for the negligent hiring and retention of Pickard, as they did not consider his "propensity for violent conduct toward members of the public" before offering him a position as a deputy.  DN 1 at 5.

The undisputed facts are as follows.  On October 1, 2004, Lacer's two minor children were staying with her in-laws and her estranged husband, Kevin Lacer.  Between 2:00 and 2:30 a.m., Lacer arrived at her in-law's residence, ostensibly to collect her two children and take them back to her home.  After Lacer was denied entrance into residence, she refused to leave the property even after her husband and in-laws told her that they intended to call the police.  Pickard was subsequently dispatched to the scene and arrested Lacer for criminal trespass.  In effectuating the arrest, Pickard used mace on Lacer's eyes, ears, and mouth.  Oddly enough, while a footnote in Defendants' motion for summary judgment alludes to the subsequent trial, it is altogether unclear to the Court whether Lacer was convicted of this crime.  DN 42 at 1-2.

There are markedly divergent narratives about the events that preceded and followed Lacer's arrest.  According to her, when Pickard arrived she was peaceably sitting on her in-law's front steps.  DN 30-1 at 2.  Lacer says that Pickard was immediately aggressive toward her and ordered that she retrieve her licence out of her car to confirm her identity.  *Id*.  He then changed

---

[1] The relevant portion of Lacer's complaint states that Pickard's actions deprived her of her rights under the constitution to "be secure in her person and effects against unreasonable search and seizure."  DN 1 at 3.  As the holding in *Heck v. Humphrey*, 512 U.S. 477 (1994) prohibits this Court from addressing the probable cause decision underlying the arrest, an excessive force claim is the only legitimate matter this Court may here.  *See id*. at 486-87.

his mind and told her not to approach her car, stating that he would check his cruiser's onboard computer for her information. *Id*. Lacer says that she only continued toward her vehicle to collect her prescription medication. *Id*. At this point, Lacer avers that Pickard knocked her to the ground, jumped on top of her, punched her in the face, and then slammed her into her car. *Id*. He then used his mace on her, claiming that she had resisted arrest.

Providing a much different story, Defendants have offered the testimony of Brian Pickard, John Shipp, and Lacer's father-in-law. By deposition, Pickard says that upon reaching the residence, Lacer was agitated, had been screaming and pounding on the front door for some time, and that the occupants within were "terrified of her." DN 42-4 at 1. Pickard said that he warned her three times that if she did not leave the property he would arrest her for criminal trespass, requests that she thrice refused. *Id*. at 1. As he tried to place her under arrest, Pickard charges that Lacer struck him in the head and struggled against his attempts to put her in handcuffs. *Id*. at 2-3. He reacted by bringing her to the ground to restrain her movement and so that he could quickly administer the handcuffs without further incident. *Id*. at 3-5. He declares that she continued to physically resist, at one point kicking him in the groin while he was atop her. *Id*; DN 42-5 at 1-2. Only then did he use his pepper spray to bring her under control. DN 42-5 at 2. This version of events was largely corroborated by Lacer's father-in-law, Donald Lacer, testifying by deposition and affidavit. DN 42-6.

In anticipation of the trial, scheduled for June 6, 2011, each party has moved for summary judgment. Lacer claims that notwithstanding the deposition testimony that directly contradicts her version of events, there are no material facts that could be resolved in Defendants' favor. Defendants instead offer that summary judgment is appropriate for Taylor

3

County and Sheriff John Shipp, as Plaintiff has failed to demonstrate that there are any material facts in dispute regarding the claims against them. In addition, each party has filed a motion in limine. Lacer moves that any evidence Defendants have failed to turn over must be excluded, that any of her prior bad acts be removed from consideration at trial, and that the witnesses be sequestered in separate rooms during the trial. DN 31 at 1. Defendants submit that any medical or expert evidence not previously disclosed by Lacer should be stricken from use at the trial. DN 33. They also petition that she be prohibited from offering testimony or evidence concerning any prior complaints or bad acts of Pickard because such evidence is irrelevant. *Id*. Finally, Defendants ask that the Court restrict Lacer's ability to reference her contact with other law enforcement agencies and bar her from presenting any evidence of her damages, as she has failed to submit timely exhibits or testimony evidencing such. *Id*.

### **I. Motions For Summary Judgment**

#### a. Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the

case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

### b. Plaintiff's Motion

Lacer argues that summary judgment in favor of her claims are appropriate because as her behavior on the morning of October 1, 2004, was objectively reasonable, Pickard's used excessive force in arresting her. Also, under the Fourth and Fourteenth Amendments, Lacer urges that this motion is proper with regards to her substantive due process claims since Pickard's action undoubtedly "shock the conscience." She also asserts that since it is uncontradicted that Pickard did not offer "anything to help alleviate the pain the pepper spray had caused her," such action is sufficient to for summary judgment under the proposed theories of recovery. DN 30-1 at 5-6. Lastly, she sets out that as Shipp and Taylor County were the employers and aware of Pickard's inappropriate behavior prior to this incident, they should be held liable under the legal principle of respondeat superior.

Beginning with her first argument and moving toward the last, it is clear that Lacer's arguments are devoid of a basis in law and fact. With regards to her allegations for excessive force, "[i]f the plaintiff was a free person at the time of the incident and the use of force occurred

5

in the course of an arrest or other seizure of the plaintiff, the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard." *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (citation omitted). The standard dictates that any force employed by the officer must be "objectively reasonable" and that this determination grows out of "balancing the cost to the individual against the government's interests in effecting the seizure." *Id*. Not only is the officer afforded a degree of deference in reviewing his "on the spot judgment in light of the circumstances of the particular case[,]" but his subjective intentions in effectuating the seizure are irrelevant under the inquiry. *Id*.

In adopting Pickard's version of events and applying this standard, it is evident that there are a number of material facts working to deny Lacer's motion. According to Defendants' offered depositions, Lacer was shouting and beating on her in-law's door at 2:30 a.m., she refused to leave the property after being asked to do so, and after Pickard attempted to arrest her, she violently resisted him. Indeed, the only evidence that supports Lacer's version, in which she was brutally attacked by Pickard without justification, is her own, uncorroborated deposition. In a motion for summary judgment, "where the facts specifically averred by [the non-movant] contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). As there are discrepancies in the facts, summary judgment here is inappropriate.

Violations of substantive due process under the Fourteenth Amendment occur where the actions of a state official "shock the conscious." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998). In the context of an arrest, a police officer's use of force rises to this level where its sole purpose is "to cause harm unrelated to the legitimate object of arrest." *Id*. To succeed on

6

this claim, Lacer must show that Pickard's actions were "malicious, sadistic, and imposed not to restore order, but only to cause harm." *Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001). Reviewing the facts in the light most favorable to Defendants, ample evidence is present to support Pickard's version events, and therefore summary judgment is not warranted.

Lacer advances that summary judgement on her allegations of battery is merited since Pickard intentionally swept her legs and sprayed her with pepper spray. She further posits that because she had a reasonable apprehension that Pickard would attack her anew, and as Defendants have not proven otherwise, her claim for assault is ready for adjudication. Under Kentucky law, assault "requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001). However, peace officers are generally insulated from liability under the doctrine of qualified immunity for their "'good faith judgment calls made in a legally uncertain environment.'" *Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky. Ct. App. 2007) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 521-23 (Ky. 2001)). When there is a question of fact regarding whether the officer acted in good faith, summary judgment on that claim is precluded. *Gatewood v. Graham-Matheney*, No. 3:09-CV-00299, 2011 WL 847039, at *5-6 (W.D. Ky. Mar. 8, 2011) (applying Kentucky law). Here, given the previous factual descriptions, there exists such a dispute; ergo, this motion is inappropriate.

Summary judgment for Lacer's claim for outrage is also unwarranted. Kentucky courts have "set a high threshold for outrage claims," *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 791 (Ky. 2004), and "a claim for the tort of outrage requires the plaintiff to prove conduct which is 'so outrageous in character, and so extreme in degree, as to go beyond all possible

7

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Humana of Ky., Inc. v. Seitz,* 796 S.W.2d 1, 3 (Ky. 1990) (quoting Restatement (Second) of Torts § 46(1) cmt. d (1965)). Viewed through Pickard's eyes, there is no question that his behavior was more than reasonable under the circumstances and does not meet the stringent requirements to succeed on a claim of outrage via this motion.

Finally, Lacer's conclusion that Shipp and Taylor County are liable for Pickard's actions is wholly devoid of merit. Kentucky law requires that to avoid claims of negligent hiring and retention, an employer must "use reasonable care in the selection or retention of its employees." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 732 (Ky. 2009) (citing *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. Ct. App. 1998)). However, in this motion Lacer improperly relies upon the theory of respondeat superior in seeking to show negligence on the part of these parties. "[U]nder 'respondeat superior,' the employer is strictly liable for the act, while under the theory of negligent hiring/retention, the employer's liability may only be predicated upon its own negligence in failing to exercise reasonable care in the selection or retention of its employees." *Id*. Lacer has offered no evidence surrounding the general hiring practices of Shipp or Taylor County, nor has she provided proof that they were on notice of any unreasonable risk given Pickard's past behavior. Thus, summary judgment in her favor is not merited.

Lacer's motion for summary judgment is little more than a series of conclusory arguments, divorced from the clear record and applicable law. It is entirely unjustified and accordingly DENIED.

### c. Defendants' Motion

Defendants move for summary judgment on the claims against Shipp and Taylor County,

stating that such action is appropriate considering that Lacer has offered no proof that either was negligent in their hiring or retention of Pickard. Shipp and Taylor County also argue that to the extent Lacer premises her arguments on respondeat superior, Kentucky law does not extend liability under such a theory. Although not specifically addressed by Lacer, given her failure to respond to this motion, allusions have been made in the record that Pickard may have engaged in misconduct while he was previously employed with the Danville Police Department.[2] *See* DN 35; DN 36; DN 37; DN 38; DN 42-7 at 1-2. As such, the Court will construe these alleged transgressions as the basis for Lacer's accusations of negligence in his hiring.

As stated above, the time has passed for Lacer to respond to this motion. Since the law requires that she present more than a mere scintilla of evidence in support of her position and she has failed to do so, this Court must grant the Defendants' Motion for Summary Judgment. *See Hartsel*, 87 F.3d at 799. Notwithstanding her failure to reply, this Court believes that the evidence before the court does not present an issue of material fact upon which a reasonable jury could find for Lacer on this claim.

"To prove a claim of negligent hiring under Kentucky law, the plaintiff must prove that: '(1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff.'" *Haley v. City of Elsmere*, No. 2008-CV-106, 2010 WL 3515564, at *9 (E.D. Ky. Aug. 31, 2010) (citations Kentucky law). In Shipp's deposition

---

[2] Specifically, these documents attached to this motion seem to indicate that Pickard was either disciplined or investigated for stealing merchandise when he worked at Wal-Mart, harassing an employee of the store, and planting a computer virus on the Danville Police Department's computer system. DN 42-7 at 2.

testimony, he described that he was given complete autonomy in making personnel decisions for the sheriff's department and that Taylor County was only involved insofar as they approved his budget every year. DN 42-7 at 1. He also remarked that before hiring Pickard, he was not aware of any complaints with the Danville Police Department, and that even if he had been, the offered problems were of little concerns since none involved allegations of wrongful arrest or excessive force. *Id*. at 1-2. From this factual foundation and in the absence of evidence or an argument to the contrary, the Court is satisfied that no reasonable jury could find Shipp nor Taylor County liable for negligent hiring or retention. *See CMACO Automotive Sys., Inc. v. Wanxiang Am. Corp.*, 589 F.3d 235, 242 (6th Cir. 2009) (stating that summary judgment is appropriate when no reasonable jury could find for the non-moving party). An investigation was undertaken prior to Pickard employment by the Taylor County Sheriff Department and nothing abnormal was discovered with his job history. That Taylor County did not exercise discretion over personnel decisions with the sheriffs department counsels that it was improperly included as a party in this matter.

What is more, neither of these Defendants may be held to account for Pickard's actions under respondeat superior. Kentucky law prohibits suit against an employer under the theory where the underlying tort is intentional. *Patterson v. Blair*, 172 S.W.3d 361, 366-69 (Ky. 2005). Therefore, the state law claims assault, battery, and outrage are not transferable to Shipp or Taylor County. What is more, liability of a local governments and their agencies under section 1983 may not be premised on it either. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 505-06 (6th Cir. 1996).

Even if Lacer had chosen to base her claims on a proper theory, the relevant legal

10

precedent bars section 1983 liability against Taylor County and Shipp. In *Sexton v. Kenton Cnty. Detention Center*, 702 F. Supp. 2d 784 (E.D. Ky. 2010), Judge Bertelsman described the requirements to prove a municipality and its arms liable for constitutional deprivations under section 1983:

> When a section 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. The Court will first address the second issue, i.e., whether the municipality is responsible for the alleged constitutional violation.
> 
> A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. Simply stated, the plaintiff must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy. The policy or custom must be the moving force of the constitutional violation in order to establish the liability of a government body under § 1983.
> 
> To constitute a moving force behind plaintiffs' injuries, the policy or custom must be closely related to the ultimate injury. Proof merely that such a policy or custom was likely to cause a particular violation is not sufficient; there must be proven at least an affirmative link between policy or custom and violation; in tort principle terms, the causal connection must be proximate, not merely but-for causation-in-fact.

*Id*. at 789-90 (internal citations and quotation marks omitted). Lacer has not provided any evidence from which the Court could possibly conclude that there was a policy by Taylor County or the head of the Sheriff's Department to do anything, much less a policy to hire officers with the threat of violating the constitutional rights of citizens. She has failed to offer evidence into the hiring practices of these Defendants or even articulate a theory why the current practices are inadequate to protect her. Nor does she point to pertinent evidence that Shipp and Taylor County were aware of any "red flags" regarding Pickard's behavior. Such a dearth of evidence cannot possibly satisfy the moving force requirement described above. Ultimately, Lacer's conclusory allegations are entirely unsupported by the instant record, do not comport

with the precedent under section 1983, and therefore these claims as applied to Shipp and Taylor County should be dismissed.

When considering Lacer's silence and the unambiguous legal precedent surrounding these issues, the Court is convinced that Defendants' motion for summary judgment is appropriate. Accordingly, it is GRANTED.

**II. Motions in Limine**

a. Plaintiff's Motion

Lacer's Motion in Limine seeks to exclude the evidence that she had not yet received from Defendants. She does not elaborate what this evidence might be or upon what provision in the Federal Rules of Evidence she is relying. She also asks that her prior bad acts and criminal convictions be excluded from evidence, or that she receive reasonable notice before it is employed under Kentucky Rule of Evidence 404(c). Finally, Lacer requests that the witnesses be separated in different rooms during the trial prior to their testimony.

A number of the counter points in Defendants' response are well taken. The Court agrees that Lacer's first request is overly vague and thus impossible to address. She does not explain to what information she is referring or even if certain discovery requests propounded upon Defendants have gone unanswered. The Court is disinclined to grant such a motion absent specifics. Next, this action resides in federal court, and therefore is not impacted by Kentucky's evidentiary rules.[3] Lacer's request to sequester the witnesses in different rooms is both nonsensical and unnecessary. In her motion, she claims that since there is conflicting testimony

---

[3] In addition, the particular rule cited by Lacer deals exclusively with criminal actions, which this is not. *See* KRE 404(c) ("In a criminal case . . ."). To the extent that Lacer is attempting to raise an objection under Federal Rule of Evidence 404, this is addressed below.

12

in the case, "the deputies [should be] separated in different rooms."  DN 31 at 2.  Pickard was the lone deputy who witnessed the events of October 1, 2004, and the only person whose deposition testimony diverges from the bulk of the record is Lacer's.  Accordingly, these requests are denied.

Within Defendants' response is a request to use Lacer's past convictions and previous erratic behavior as evidence against her during trial under Federal Rule of Evidence 404(b).  DN 43 at 2.  They argue that such evidence is admissible to show "the genuine fear on the part of the members of [Lacer's family]," and to "explain why [Lacer] was unwelcome at [her in-law's] residence."  *Id*. at 3.

Under Rule 404(b),

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b).  Before allowing a jury to consider evidence under 404(b), this Court must:

> (1) make a preliminary finding as to whether sufficient evidence exists that the prior act occurred; (2) determine whether the other act is admissible for one of the proper purposes outlined in Rule 404(b); and (3) apply Rule 403 balancing to determine whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice or the other concerns embodied in Rule 403.

*United States v. Allen*, 619 F.3d 518, 523 (6th Cir. 2010) (citing *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001)).  Defendants argue that Lacer's bad acts and convictions are akin to absence of mistake or accident on the part of her in-laws.  The Court does not agree, primarily because, the actions of Lacer's in-laws are not in question; rather the only actor who is being scrutinized in this case is Pickard, and there is no dispute that he was unaware of Lacer's past

behavior and convictions when he confronted her on October 1, 2004.[4] The Court concludes that the introduction of her past bad acts and convictions would serve only to prejudice the jury against her and thus they are not admissible as direct evidence under Rule 404(b).

Notwithstanding this determination, such evidence may be admissible as proper impeachment evidence of under Rules 608 and 609. However, as the Court is unfamiliar with the particulars of this evidence, it will reserve judgment on it until trial or another, more detailed motion is presented for its consideration.

Accordingly, Plaintiff's motion is GRANTED IN PART AND DENIED IN PART.

### b. Defendants' Motion

Finally, Defendants offer their own motion in limine, arguing to exclude materials that Lacer has failed to release in the course of discovery, including evidence as to her alleged medical condition, her damages, and any experts that she may have retained but whose identity has not been released. The motion also requests that the Court bar Lacer from testifying about any contact she may have had with the military police, FBI or Kentucky State Police concerning this matter, as she has not produced during discovery the reports to these agencies that she allegedly made. Finally, Defendants ask that the Court exclude any bad act evidence under Rules 404(b) and 608 concerning Pickard because it is irrelevant. Lacer has not responded to this motion.

Considering the admissibility of her damages evidence, Lacer may recover compensatory

---

[4] At least one of the bad acts that Defendants seek to introduce under Rule 404(b) at trial is an allegation that Lacer choked a mentally handicapped girl a few days before the incident in question. DN 43-4 at 2. It strains the bounds of logic to even contemplate how such evidence, or Lacer's past criminal convictions, would be probative of the events in question.

14

and punitive damages for assault and battery. *See Harrod v. Fraley*, 289 S.W.2d 203, 205 (Ky. 1956); *Mann v. Watson*, 283 S.W. 1052, 1054 (Ky. 1926). She may also receive damages for potential violations under section 1983 for "pain, suffering, embarrassment, and humiliation." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 546 (6th Cir. 2003) (*Memphis Cnty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986)). These damages for embarrassment and humiliation are predicated on Lacer's own, subjective estimations and thus documentation is not required. It would also appear that her physical injuries are minor. Nevertheless, if Lacer has not produced copies of her medical records and bills, then evidence of those damages may not be introduced at trial. With expert testimony, the Court agrees with Defendants' proposition that the time has passed for disclosing these witnesses and opinions. Expert disclosures for Lacer were due November 1, 2010, and to allow additional time for the disclosure and questioning of these witnesses would unduly delay this action; as such, she may not call any expert witnesses at trial.

With Lacer's alleged non-disclosure of statements to the other law enforcement agencies, such issues may be addressed at trial. Lacer's counsel must approach the bench and provide notice preceding the introduction of this evidence. This will allow defense counsel the opportunity to offer whatever objections he feels are necessary.

Finally, as described earlier, evidence offered under Rule 404(b) may not be used to "prove the character of a person in order to show action in conformity therewith" but it may be used for other purposes, such as "proof of motive, opportunity, intent," etc. Fed. R. Evid. 404(b). While the record is not clearly developed, Defendants appear to be attacking any attempt by Lacer to introduce at trial Pickard's past disciplinary record from the Danville Police Department. The Court agrees with Defendants' contention that this past conduct does not

15

implicate any of the proposed uses in Rule 404(b) and therefore its introduction as such would be inappropriate. Nevertheless, supposing that Pickard testifies, this evidence might be admissible under Rule 608, which allows for inquiries into the truthfulness or untruthfulness of a witness on cross examination so long as extrinsic evidence is excluded from the questioning. Fed. R. Evid. 608(b). However, the Court will reserve its ruling on such a matter until a more thorough description of the incidents is provided, or until this becomes an issue at trial. Again, Lacer's counsel should approach the bench before introducing this evidence to impeach Pickard.

Thus, this motion is GRANTED IN PART AND DENIED IN PART.

## CONCLUSION

For the foregoing reasons, the following is HEREBY ORDERED:

(1) Plaintiff's Motion for Summary Judgment (DN 30) is DENIED.

(2) Defendants' Motion for Partial Summary Judgment (DN 34) is GRANTED. Taylor County and Sheriff John Shipp are DISMISSED; the action continues against Deputy Brian Pickard.

(3) Plaintiff's Motion in Limine (DN 31) is GRANTED IN PART AND DENIED IN PART. Defendants may not introduce evidence of Lacer's prior bad acts or convictions under Federal Rule of Evidence 404(b) as direct proof of her behavior or actions on October 1, 2004. The Court withholds its decision on whether such evidence would be proper impeachment evidence under Federal Rules of Evidence 608 and 609. Such a determination will be made at trial.

Plaintiff's requests that all evidence not disclosed should be stricken from use at trial and that the witnesses be separated during the course of trial are

DENIED.

(4)  Defendants' Motion in Limine (DN 33) is GRANTED IN PART AND DENIED IN PART.

Evidence of Plaintiff's damages stemming from her physical injuries may not be introduced at trial. Plaintiff may however testify as to her feelings of humiliation and embarrassment at trial and the corresponding damages.

Only the experts that were disclosed in accordance with the Court's scheduling order of August 8, 2010, may be relied upon at trial. All others not previously disclosed are stricken from this proceeding.

Plaintiff may not introduce Pickard's past disciplinary record as evidence under Federal Rule of Evidence 404(b), or as substantive proof in its case-in-chief. The Court withholds its decision on whether such evidence would be proper impeachment evidence under Federal Rule of Evidence 608. Such a determination will be made at trial.

Plaintiff's counsel must approach the bench at trial prior to his introducing evidence of Plaintiff's contact with other law enforcement agencies, as described in this motion. He must do the same before introducing the above described impeachment evidence of Pickard. This will allow the Court to review the merits of this evidence and to allow defense counsel to offer anew the objections he has made in these motions.