UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:05-CV-00094

PAMELA LYNN LACER                                                Plaintiff

v.

BRIAN M. PICKARD                                               Defendant

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant Brian M. Pickard's Motion for Summary Judgment. (Docket No. 83.) Plaintiff Pamela Lynn Lacer has responded, (Docket No. 86), and Defendant has replied, (Docket No. 104). For the following reasons, Defendant's Motion will be DENIED.

BACKGROUND

This matter arises from Plaintiff Pamela Lynn Lacer's arrest by Defendant Brian Pickard, a deputy sheriff with the Taylor County Sheriff's Department, on October 1, 2004. Plaintiff filed the instant civil suit under 42 U.S.C. § 1983 alleging that Defendant used excessive force in effecting her arrest. Plaintiff also asserts claims of assault, battery, and outrage under Kentucky law.

Much of the factual happenings in the early morning of October 1, 2004, remain in dispute. The undisputed facts are as follows. At the time of her arrest Plaintiff and her then-husband, Kevin Lacer, were experiencing marital difficulties. Kevin Lacer had taken the couple's two minor children to his parents' home in Campbellsville, Taylor

County, Kentucky, approximately forty-five minutes from the Plaintiff's residence in neighboring Green County, Kentucky. Sometime between 2:00 and 2:30 a.m., Plaintiff arrived at her in-laws' residence in Campbellsville, ostensibly to collect the children and take them back to her home. Plaintiff was denied entrance to the residence by Kevin Lacer and his father, Donald Lacer, who threatened to call the police if Plaintiff did not leave. Plaintiff refused to leave and instead waited for the police. Defendant was dispatched to the scene and subsequently arrested Plaintiff. Plaintiff was charged with several crimes, including trespass and resisting arrest. Plaintiff was convicted of criminal trespass in an August 2006 trial, but the jury could not reach a verdict on the other charges (including the charge for resisting arrest), and the court declared a mistrial. Long delays ensued with the remaining charges, which were not resolved until April 2012 when those charges were merged and amended into a disorderly conduct charge to which Plaintiff entered an *Alford* plea.

The parties present markedly different narratives about the events that preceded and followed Plaintiff's arrest on October 1, 2004. For purposes of this Opinion, the Court considers the facts in the light most favorable to Plaintiff. According to Plaintiff, when Defendant arrived he immediately began cussing at her, asking "What the fuck are you doing here . . . it's 2:30 in the fucking morning?" (Docket No. 87-1, at 7.) After some interaction among Plaintiff, Defendant, Kevin Lacer, and Donald Lacer, Plaintiff states that Defendant asked her for her driver's license. When Plaintiff indicated that the license was in her car, Defendant stated, "Okay, let's go get it," and began walking with her toward the vehicle. (Docket No. 87-1, at 8.) As she reached the car and began to open the door, Plaintiff states that Defendant stopped her, saying "No, fuck it, we'll

get it off the computer." (Docket No. 87-1, at 8.) Plaintiff says she told Defendant she needed to retrieve her prescription medicine from the car and then began to reach into the passenger side of the car toward her purse. At that point, Plaintiff states that Defendant swept her legs, taking her to the ground, and then landed on her side, pinning her down. Plaintiff says she then rolled over, at which point Defendant said to her, "Oh, you want to resist arrest, do you?" (Docket No. 87-1, at 8.) Plaintiff testified that Defendant then punched her in the face. After placing his knee in her stomach and turning her over, Defendant handcuffed Plaintiff and pulled her up by her arm. Plaintiff says that throughout this time she was yelling and cussing at Kevin Lacer, calling for him to help her. Plaintiff testified that Defendant then maced her, first in her eyes, then in her ear, and finally in her mouth. Defendant and Kevin Lacer together, she says, then proceeded to walk her to Defendant's car. Plaintiff says her head was slammed into the back of the door as she was placed in the police car.

Later, after leaving the in-laws' residence, Defendant met another officer and transferred Plaintiff to a different police vehicle. During that transfer, Plaintiff testified she heard the other officer ask Defendant something to the effect of "So, how are you gonna write this up?" to which Defendant answered, "Oh, we'll just tell them we -- she kicked some buttons off [of Defendant's shirt] or something." (Docket No. 87-1, at 9.)

Plaintiff sought medical treatment the following day, at which point she says she discovered that her orbital bone had been broken and that her had been nose fractured in two places. Plaintiff also claims that she suffered injury to her right wrist and that several stiches from a preexisting breast injury had been ripped. (Docket No. 87-1, at 10.)

STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; he must present evidence on which the trier of fact could reasonably find for him. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Still, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

DISCUSSION

In order to prevail on her § 1983 claim for excessive force, Plaintiff must establish that a constitutional violation occurred and that Defendant is not entitled to qualified immunity. *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008). Because Defendant asserts he is entitled to qualified immunity, the Court will first determine whether Defendant's actions were unconstitutional before turning to whether Defendant is entitled to qualified immunity for any such violation.

There is no dispute whether Plaintiff was "seized" for purposes of triggering the Fourth Amendment's protections. Accordingly, the Court will proceed to determine whether the force used was unreasonable under the Fourth Amendment. In making this determination, courts employ an "objective reasonableness" standard. *Id.* at 455. Relevant factors to consider when determining whether the level of force used was objectively reasonable include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* (alteration in original) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). However, the Sixth Circuit advises that "[t]hese factors are not an exhaustive list, and the ultimate inquiry is whether the seizure was reasonable under the 'totality of the circumstances.'" *Id.* (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006)).

Plaintiff claims that Defendant, without provocation, swept her legs, struck in her in the face, and handcuffed and deployed pepper spray into her eyes and mouth. Trespass, the crime at issue, is a misdemeanor, and Defendant essentially concedes that trespass is not a serious offense. Taking the facts in a light most favorable to Plaintiff, it

is questionable whether she posed an immediate threat to Defendant's safety. When she reached into the vehicle, she contemporaneously explained that she intended to retrieve her medication. Indeed, Plaintiff was at her vehicle because Defendant had taken her there to retrieve her driver's license. Plaintiff admits she was agitated throughout the encounter; however, there is no indication she actively resisted arrest or attempted to flee, at least not before she was unexpectedly taken down by Defendant and pinned to the ground. In view of the totality of the circumstances, and in viewing the facts in the light most favorable to her, the Court is satisfied that Plaintiff has presented sufficient facts upon which a jury could conclude that Defendant used more force than was necessary. *See Pouillon v. City of Owosso*, 206 F.3d 711, 715 (6th Cir. 2000) (noting that "[w]here . . . the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." (quoting *Sova v. City of Mount Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998))). That is, while Plaintiff's actions may have been sufficient to prompt some reaction from Defendant, the takedown, punch to the face, and pepper spraying at close range after Plaintiff was handcuffed can certainly be characterized as an excessive response. As such, Plaintiff has presented sufficient evidence that Defendant's actions were objectively unreasonable under the Fourth Amendment.

Next, the Court must determine whether Defendant nonetheless is entitled to qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Feathers v. Aey*,

319 F.3d 843, 847-48 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts employ a three-part inquiry in determining whether qualified immunity applies to a plaintiff's federal claims:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Id.* at 848 (internal quotation marks omitted) (citing *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

As noted above, the facts viewed in the light most favorable to Plaintiff show that a constitutional violation occurred. Defendant argues that "there was no clearly established precedent to put him on notice that his use of force in these circumstances was unreasonable." (Docket No. 83-1, at 10.) The Court disagrees. The Sixth Circuit has long recognized that "the right to be free from excessive force is a clearly established Fourth Amendment right." *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001). The actions alleged by Plaintiff, together with the circumstances of her arrest, unquestionably show a violation of the clearly established right to be free from excessive force, which a reasonable officer would be aware of. Because Plaintiff has offered sufficient evidence indicating that Defendant's actions were objectively unreasonable in light of that clearly established right, Defendant is not entitled to qualified immunity on Plaintiff's Fourth Amendment excessive force claim.

Defendant further insists that he is entitled to official immunity on Plaintiff's state law claims of assault, battery, and outrage. Again, the Court disagrees. "'Official immunity' is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions." *Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky. 2001). Qualified official immunity applies to the performance by a public officer of discretionary acts that are taken in good faith and within the scope of the officer's authority. *Id.* at 522. A lack of good faith "can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position." *Id.* at 523. Thus, in effect, this inquiry mirrors the inquiry for objective reasonableness. *See id.* For the same reasons discussed above relative to qualified immunity on her § 1983 claims, Plaintiff has sufficiently shown a violation of a clearly established right that an officer in Defendant's position presumptively would have known was afforded to her. Therefore, Defendant is not entitled to official immunity on Plaintiff's state law claims.

Of final note, Plaintiff also argues that Defendant's instant Motion is untimely and should be stricken as such. There may be some merit to this argument. However, because the Court's discussion above renders this argument moot, the Court need not address further the timeliness of Defendant's Motion for Summary Judgment.

CONCLUSION

Therefore, having considered the parties' arguments and being otherwise sufficiently advised, for the foregoing reasons;

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment, (Docket No. 83), is DENIED.

Date:

cc: Counsel